IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

VICKI KOCH aka VICKI BUTRICK,      )
                                    )
                    Plaintiff,      )
                                    )
v.                                  )      Case No.  CIV-07-371-D
                                    )
CITY OF DEL CITY, *et al*.,         )
                                    )
                    Defendants.     )

# O R D E R

Before the Court are Defendant John Beech's Motion for Summary Judgment [Doc. No. 34] and Defendant City of Del City's Motion for Summary Judgment [Doc. No. 35].  All defendants seek a judgment as a matter of law pursuant to Fed. R. Civ. P. 56, on Plaintiff's claims under 42 U.S.C. § 1983 and state law arising from her arrest.  Plaintiff has timely opposed the Motions, and Defendants have filed reply briefs.  The Motions are thus at issue.

## Procedural Background

Plaintiff Vicki Koch a/k/a Vicki Butrick filed this action in state court on March 8, 2007, against the City of Del City, Oklahoma (the "City"), and John Beech, a Del City police officer ("Officer Beech").  In her state court petition, Plaintiff alleged that Defendants, acting under color of state law, violated her constitutional rights during events on September 13, 2005.  Specifically, Plaintiff alleged that Officer Beech arrested her without a warrant and without probable cause near her residence in Del City, "forced her to the ground and assaulted her, causing injury to her arms and wrists, and prevented her from entering into her own house," and "placed her in handcuffs too tight and caused injuries to Plaintiff's wrists."  *See* Petition at 2, ¶¶ 1-2.  Plaintiff alleged she was then "transported to the Oklahoma County jail and incarcerated there until she posted bond."  *Id*. at 3 ¶ 2.

According to the petition, Officer Beech initiated criminal charges against Plaintiff of assault and battery on a police officer and obstructing an officer in the performance of his official duties, but the charges were dismissed on March 2, 2006. Based on these alleged facts, Plaintiff seeks damages under Count I of the petition against Officer Beech for his "unlawful and malicious physical abuse of Plaintiff, . . . [which] deprived Plaintiff of her rights to equal protection of the laws and impeded the due course of justice in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. Section 1983." *Id*. at 2, ¶ 3. Similarly, Plaintiff seeks damages under Count II of the petition against Officer Beech for his "unlawful and malicious arrest of Plaintiff, . . . [which] deprived Plaintiff of her liberty without due process of law and deprived her of equal protection of the laws, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. Section 1983." *Id*. at 3, ¶ 3. Under Count III of the petition, Plaintiff seeks damages from the City for its alleged "fail[ure] to instruct, supervise, control and discipline on a continuing basis" Officer Beech. *Id*. at 4, ¶ 2. The final numbered paragraph of the petition states: "Defendants are also liable to Plaintiff for assault and battery and false arrest under common law." *Id*. at 5, ¶ 7.

Defendants timely removed the case to federal court based on subject matter jurisdiction under 28 U.S.C. § 1331. The City, and Officer Beech in his official capacity, moved to dismiss Plaintiff's demand for punitive damages, which was granted. Upon the completion of discovery in the case, Defendants moved for summary judgment by filing the Motions at issue. Plaintiff, through counsel, timely responded to the Motions, and the parties filed their trial submissions. During the pendency of the Motions, however, a second attorney appeared for Plaintiff and began efforts to conduct additional discovery. Defendants both objected to the untimely discovery and moved to disqualify the new attorney, Joyce Good, because she was also a fact witness. Through a series of

events that need not be recounted in detail, Plaintiff discharged her original attorney, began filing papers personally and through Ms. Good, took an appeal from various orders entered by the Court, and sought mandamus relief from the court of appeals. Ms. Good was later granted permission to withdraw as Plaintiff's attorney, and Plaintiff elected to proceed *pro se*. To date, Plaintiff has not sought leave to amend the summary judgment responses filed by her first attorney or to supplement the summary judgment record. Therefore, the Court proceeds to rule on Defendants' Motions.

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); Fed. R. Civ. P. 56(e)(2). "To accomplish this, the facts must be identified by reference to affidavits,

deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671. If such a showing is made, the Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## Statement of Undisputed Facts[1]

Before September 8, 2005, Plaintiff was a caregiver for an elderly woman named Gladys Lance.[2] Plaintiff also was designated as an attorney-in-fact for Ms. Lance under a durable power of attorney dated January 19, 2004. On September 8, 2005, the District Court of Oklahoma County, Oklahoma, issued an order appointing Pat Loar, Ms. Lance's niece, as her special guardian. Plaintiff and her attorney, Joyce Good, did not receive notice of the hearing that day before the order was issued. The order was effective immediately and was based on a finding of imminent danger to the health or safety and the financial resources of Ms. Lance unless an immediate appointment of a special guardian occurred. The order also stated:

> The Court finds that the caregiver, Vicki Butrick (Vicki Koch Butrick) or caregiver's family must immediately tell DHS, Petitioner [Pat Loar] and Gladys Lance's family (relatives) the whereabouts of Gladys Lance and why she was removed from her home. The Court finds that the guardian will have authority to file missing persons police reports, obtain law enforcement assistance, and do that which is necessary to find the whereabouts of Gladys Lance.

---

[1] This statement includes facts presented by Defendants that are supported by the record and either admitted by Plaintiff or not opposed in the manner required by Rule 56, as well as additional facts presented by Plaintiff that are supported by record. Facts or factual issues raised by Plaintiff without citation to the record, or by citation to evidentiary materials that do not support the alleged fact or issue, are disregarded. Immaterial facts are also disregarded. All facts are stated in the light most favorable to Plaintiff.

[2] Defendant Beech states in his brief that Ms. Lance was then 101 years old, but this fact is not shown by the record.

*See* Def. Beech's Mot., Ex. 1 [Doc. 34-2].[3]   Plaintiff attempts to dispute receiving notice of the September 8, 2005, order when it was issued, but she fails to respond in the manner required by Rule 56(e).  Further, Plaintiff admits "there was some kind of paper left on her door, but she was not sure when it was [left] after 6:30 p.m. on September 9, 2005, nor what the paper said."  *See* Pl.'s Resp. Def. Beech's Mot. Summ. J. [Doc. 40] at 8, ¶ 8.  Plaintiff has testified that a paper was left on her door "the Friday before [she] was hurt," or September 9, 2005.  *See* Koch Dep. 149:12-24.[4]

Plaintiff knew where Ms. Lance was living prior to Plaintiff's arrest on September 13, 2005.[5] Plaintiff has testified that she learned on September 9, 2005, her parents had admitted Ms. Lance to a nursing home, but she did not relay this fact to her attorney, Joyce Good.  Prior to her arrest, Plaintiff received notice that Adult Protective Services (APS) was demanding to know the whereabouts of Ms. Lance.  In a letter received by Plaintiff's attorney on September 9, 2005, APS threatened the use of law enforcement services, specifically "the involvement by the Sheriff's office," if APS did not "hear from either [the attorney] or Vicki Koch this morning regarding the whereabouts of Gladys Lance."  *See* Def. Beech's Mot. Summ. J., Ex. 4 [Doc. 34-5].  Plaintiff did not call APS to provide information concerning Ms. Lance after receiving notice of the September 8 order or the September 9 letter from APS.  Plaintiff contends, without record support, that she relied on her attorney, Ms. Good, for advice regarding how to proceed.   She also presents evidence that Ms. Good told APS by telephone on August 15, 2005, that Plaintiff's parents were admitting Ms. Lance to a nursing home.  However, in September, 2005, Plaintiff did not tell Ms. Good where

---

[3]  A copy of this order also appears in the record as Plaintiff's Exhibit 4 [Doc. No. 40-5].

[4]  Plaintiff was arrested on Tuesday, September 13, 2005.

[5]  Plaintiff attempts to deny this fact but fails to do so in the manner required by Rule 56.  Further, Plaintiff has testified that she visited Ms. Lance in a nursing home on September 9, 2005, "over in Choctaw and Harrah," although she did not know the exact address.  *See* Koch Dep. 152:8-12, 156:1-14.

Ms. Lance was, but nonetheless "left it up to [Ms. Good]" to give APS any information. *See* Koch Dep. 161:1-18. On September 9, 2005, Plaintiff had a telephone conversation with Julia Wilson, attorney for Pat Loar, in which Plaintiff refused to disclose the whereabouts of Ms. Lance.[6]

On September 13, 2005, Officer Beech began his shift at 2:30 p.m., and during a routine "lineup" – where officers receive information for their shift duties – he was advised that there was an APS "pickup order" for Ms. Lance and that he should periodically check an address in Del City to locate her. Officer Beech did not personally have a copy of the "pickup order" but he understood there was one in place and it authorized him "[t]o locate the whereabouts of the victim, Gladys Lance, and take her into protective custody." *See* Beech Dep. 35:16-19.[7] At 6:45 p.m., Officer Beech was dispatched to Plaintiff's residence to check on the welfare of Ms. Lance. He arrived at 6:59 p.m. and approached Plaintiff outside of her house. After identifying Plaintiff, Officer Beech asked her where Ms. Lance was. According to Officer Beech, Plaintiff did not answer but, instead, said he should leave her property and speak to her attorney. Plaintiff admits she told Officer Beech that he should not be on her property and should go talk to her attorney; she has testified she also told him, at some point, that Ms. Lance was in a nursing home. *See* Koch Dep. 208:6-16. However, Plaintiff's deposition testimony is unclear and somewhat inconsistent as to the sequence and timing of events.[8] Officer Beech grabbed Plaintiff by the arm to prevent her from entering the

---

[6] Plaintiff states in her response brief, without citation to the record, that she did not know at the time of her conversation with Ms. Wilson that Ms. Wilson was the attorney for a court-appointed guardian for Ms. Lance.

[7] Plaintiff denies that Officer Beech was told there was a "pickup order" for Ms. Lance but provides no fact or evidence to dispute this fact in the manner required by Rule 56. She relies solely on the facts that he did not have a copy of any "pickup order" and did not produce a copy in discovery.

[8] Plaintiff appears to testify that she said Ms. Lance was in a nursing home after Officer Beech attempted to arrest her. Specifically, she testified that Officer Beech was holding both of her arms and twisting them and "that's when [she] said, you [Officer Beech] don't have to hurt me to make me tell you

house because she appeared to be attempting to flee into her house, and he informed Plaintiff she was under arrest for obstruction of justice.[9] Plaintiff actively resisted being placed in handcuffs and Officer Beech forcibly pulled – or according to Plaintiff, was wringing or turning – her arms behind her back to handcuff her. *See* Koch Dep. 207:7-10, 210:11-16.[10]

After the arrest, Officer Beech transported Plaintiff to the Oklahoma County jail. He also filed a probable cause affidavit in support of charges against Plaintiff for obstructing an officer in the discharge of duties, in violation of Okla. Stat. tit. 21, § 540, and assault and battery on a police officer, in violation of Okla. Stat. tit. 21, § 649(B). In the affidavit, Officer Beech stated that Plaintiff struck him in the chest with her fist and forearm when he tried to restrain her and that he had to physically detain her as she struggled to pull away by "trying to hold her arms under her person and rolling on the ground." *See* Pl.'s Resp. Def. Beech's Mot. Summ. J., Ex. 3 [Doc. 40-4]. The district attorney filed charges against Plaintiff in October, 2005, which were later dismissed.

Plaintiff claims she experienced pain during the arrest and received abrasions and bruises on her body, including her arm, hand, wrist, chest and abdomen, as a result of the struggle with Officer Beech. She received medical treatment on September 17, 2005, for abrasions on her right forearm and left thumb. According to the emergency room record, Plaintiff's wounds "appeared to

---

where she is. I'll tell you." *See* Koch Dep. 210:17-21.

[9] It is disputed whether Officer Beech made this statement before or after he touched Plaintiff. Although Plaintiff denies attempting to flee, she admits in her deposition testimony that she said she wanted to go inside and "tried to stick [her] hand in the door." *See* Koch Dep. 206:6-10. She also testified that during the physical encounter with Officer Beech she had "always been trying to go in [her] door." *Id.* 210:1-7.

[10] Plaintiff states in her response to Officer Beech's motion that he and another officer, Corporal Sterling, also searched her house without a warrant. However, the record citation accompanying this stated fact is deposition testimony of Officer Beech in which he unequivocally stated that he did not enter Plaintiff's house, only Corporal Sterling went inside. *See* Beech Dep. 47:22-48:3.

be just superficial," and Plaintiff did not report any pain or other injuries but went to the emergency room for evaluation of "some sores on her wrists and arms" upon the advice of her attorney. *See* Pl.'s Resp. Def. Beech's Mot. Summ. J., Ex. 10 [Doc. 40-11] at 12-14. Plaintiff returned to the emergency room approximately one month later complaining of left thumb and forearm numbness. She stated she had a court appearance that day and wanted a note saying she had radial nerve damage; she was given a bandage and referred to a neurologist for nerve conduction studies. *See id*. at 23-25. Plaintiff was also seen at a medical clinic for complaints of left hand numbness in October, 2005, and wrist and elbow pain in November, 2006. Plaintiff had an MRI on December 4, 2007, for bilateral arm pain, and she received a diagnosis of degenerative changes in her right wrist. *See* Pl.'s Resp. Def. Beech's Mot. Summ. J., Ex. 12 [Doc. 40-13] at 6.

Plaintiff does not have any knowledge of the policies or customs of the City's police department or knowledge of any other incidents similar to the one at issue in this case. Plaintiff also does not know what training Officer Beech received or know of any deficiencies in his training. The City's police department does not provide its own training for police officers; they are trained by the Council for Law Enforcement Education and Training (CLEET).

### Defendants' Motions

Officer Beech seeks summary judgment in his favor on the § 1983 claims against him on the grounds that there is no factual basis for an equal protection claim, that Plaintiff's arrest did not violate the Fourth Amendment, that no excessive force was used to effectuate the arrest, and that he is entitled to qualified immunity. Regarding Plaintiff's state law claims, Officer Beech contends they are time barred under the applicable one-year statute of limitations, Okla. Stat. tit. 12, § 95(4), and they fail on the merits. The City seeks summary judgment in its favor on the grounds that Plaintiff has no factual basis for her § 1983 claims and no basis for municipal liability. The City

also seeks summary judgment on Plaintiff's state law claims on the grounds they are time barred and

they require proof Officer Beech engaged in malicious conduct outside the scope of his employment,

for which the City cannot be held liable under the Governmental Tort Claims Act, Okla. Stat. tit. 51,

§ 151 *et seq*. Alternatively, the City requests that the Court decline to exercise jurisdiction over

Plaintiff's pendent claims pursuant to 28 U.S.C. § 1367(c)(3).

## Discussion

### A. Equal Protection

Because the state court petition alleged, in a conclusory manner, that Plaintiff had been

deprived of her right to equal protection of the laws in violation of the Fourteenth Amendment,

Officer Beech begins his summary judgment arguments with the proposition that Plaintiff has failed

to allege and cannot prove an equal protection claim. Plaintiff's response brief is silent on this issue.

Thus, in the exercise of discretion under LCvR7.1(g), the Court deems the issue confessed. Further,

the record discloses no factual basis for a claim that Plaintiff was a member of a protected class, or

a "class of one," who was intentionally treated differently from other similarly situated individuals.

*See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Therefore, Defendants are entitled

to summary judgment on any equal protection claim asserted.

### B. Qualified Immunity

A recent *en banc* decision of the court of appeals summarizes that law regarding summary

judgment motions based on a defense of qualified immunity:

> When a defendant asserts a qualified immunity defense, the burden shifts to the
> plaintiff, who must first establish that the defendant violated a constitutional right.
> If no constitutional right would have been violated were the allegations established,
> there is no necessity for further inquiries concerning qualified immunity. If, on the
> other hand, a violation has been shown, the plaintiff must then show that the
> constitutional right was clearly established. This inquiry, it is vital to note, must be

undertaken in light of the specific context of the case, not as a broad general proposition . . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation . . . . Summary judgment based on qualified immunity is appropriate if the law did not put the officer on notice that his conduct would be clearly unlawful.

We have held that, for a right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains. The Supreme Court has explained that officials can still be on notice that their conduct violates established law even in novel factual circumstances.

*Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (en banc) (internal quotations and citations omitted). The two-step analysis discussed in *Cortez*, and previously mandated by *Saucier v. Katz*, 533 U.S. 194 (2001), may be addressed in any sequence. *See Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

Under the circumstances presented in this case, the Court finds the traditional analysis to be appropriate and will decide "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201.

## C.    Unconstitutional Arrest

The Fourth Amendment protects an individual against unreasonable seizure, including a warrantless arrest without probable cause to believe the person has committed a crime. *See Cortez*, 478 F.3d at 1115. "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id*. at 1116 (internal quotation omitted). "Probable cause is based on the totality of the circumstances, and requires reasonably trustworthy information that would lead a reasonable officer

to believe that the person about to be arrested has committed or is about to commit a crime." *Id*. "Police officers are entitled to rely upon information relayed to them by other officers in determining whether there is reasonable suspicion to justify an investigative detention or probable cause to arrest." *Oliver v. Woods*, 209 F.3d 1179, 1190 (10th Cir. 2000); *see also United States v. Hensley*, 469 U.S. 221, 231 (1985) ("effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another").

It is undisputed that Officer Beech was dispatched to a residence to check the welfare of an elderly woman whom he was told was the subject of an APS "pickup order." Although such an order is not clearly explained by the record, the involvement of APS signifies the provision of services under the Protective Services for Vulnerable Adults Act, Okla. Stat. tit. 43A, § 10-101 to § 10-111. Officer Beech understood that the order directed authorities to locate Ms. Lance and take her into protective custody. The order actually in place, the Order Appointing Special Guardian, expressly directed Plaintiff to immediately disclose the whereabouts of Ms. Lance and authorized the appointed guardian to obtain the assistance of law enforcement and do whatever was necessary to find Ms. Lance. Under the circumstances, Officer Beech had lawful authority to investigate the whereabouts of Ms. Lance and to require Plaintiff to answer questions about her location. Plaintiff did not answer but, instead, told him to go see her attorney (who did not know the whereabouts of Ms. Lance) and then appeared to be attempting to evade further questions by retreating into her residence. These facts and Plaintiff's actions gave Officer Beech an objectively reasonable basis to believe that Plaintiff was committing the offense of obstructing an officer in violation of Okla. Stat. tit. 21, § 540.[11]

---

[11] The statute provides: "Every person who willfully delays or obstructs any public officer in the discharge or attempt to discharge any duty of his office, is guilty of a misdemeanor." Okla. Stat. tit. 21,

The Court finds these circumstances, although factually distinguishable, to be analogous to ones recently discussed in *United States v. Sanchez*, 555 F.3d 910 (10th Cir. 2009), and to warrant a similar conclusion that the officer had sufficient grounds for an arrest. In *Sanchez*, police officers executing a search warrant for a house ordered a person standing in the driveway to get down, but instead, the person (Mr. Sanchez) attempted to flee. The court of appeals concluded that Mr. Sanchez's conduct constituted obstruction in violation of § 540 because the officers had a right to detain Mr. Sanchez during the search and, therefore, had the authority to order him to get down. Mr. Sanchez's flight, in violation of the officers' lawful order, impeded the officers who were executing the search warrant because the search was delayed while they apprehended him. Discussing Oklahoma law interpreting § 540, the court of appeals stated:

> The Oklahoma courts have interpreted the statute in a common-sense manner. For example, in *Trent v. State*, 777 P.2d 401 (Okla.Crim.App.1989), the court considered the conduct of a passenger after a traffic stop for driving under the influence. The passenger refused to leave the scene and engaged in "loud and angry" verbal harassment of the officer. *Id*. at 402-03. The court held that this conduct violated the statute because the passenger's actions prevented the officer from removing the driver's vehicle from the road and timely testing the driver's blood-alcohol level. *See id*. at 403. And in *Marsh v. State*, 761 P.2d 915, 916 (Okla.Crim.App.1988), the court held that a false statement to an officer had impeded the officer's investigation of a child's death and thus constituted obstruction.

> Mr. Sanchez's flight unquestionably impeded the officers executing the search warrant. Rather than conducting the search, they needed to chase and apprehend him. Various courts, interpreting statutes similar to Okla. Stat. Ann. tit. 21, § 540, have held that flight can constitute obstruction of an officer. "[F]light, or attempted flight, after a command to halt constitutes obstruction of an officer." *In re E.G.*, 286 Ga. App. 137, 648 S.E.2d 699, 701 (2007) (internal quotation marks omitted); *see United States v. Gonzalez*, 71 F.3d 819, 826-27 (11th Cir.1996) (defendant's flight from agents gave them probable cause to arrest him for violating 18 U.S.C. § 111(a)(1), which prohibits "forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], or interfer[ing] with" any federal officer); *People v. Allen*, 109 Cal. App. 3d 981, 167 Cal. Rptr. 502, 505 (1980) (officer had probable cause to

---

§ 540.

arrest defendant for obstruction because defendant, knowing that the officer wanted to talk with him, ran and attempted to hide).

*Sanchez*, 555 F.3d at 919; *see also United States v. Christian*, 190 F. App'x 720, 722-23 (10th Cir. 2006) (police had probable cause for arrest under § 540 where the arrestee became agitated and distracted officers during an investigation in a parking lot and refused to comply with a lawful command to step away).

Similarly, in this case, Plaintiff's refusal to disclose the whereabouts of Ms. Lance, her statements to Officer Beech, and her attempt to retreat into her residence impeded Officer Beech's investigation into the welfare of Ms. Lance and delayed his efforts to find her. Officer Beech was justified in questioning Plaintiff and preventing her from fleeing a public place. *See United States v. Santana*, 427 U.S. 38, 42 (1976) (doorway of a house is a public place). Plaintiff's nonresponsive statements to Officer Beech that he should leave her property and go talk to her attorney, when the attorney did not have the information requested, prevented him from performing his lawful duties and from determining where Ms. Lance was located.[12]

In any event, a finding that Officer Beech lacked probable cause to arrest Plaintiff would not end the qualified immunity analysis. "[L]aw enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity. Therefore, when a warrantless

_____

[12] In her summary judgment brief, Plaintiff also contends that Officer Beech's conduct violated her Fifth Amendment rights to remain silent and to receive assistance from her attorney. However, Plaintiff presents no facts to establish that she invoked a constitutional right to remain silent or requested an attorney. Rather, she argues she had no obligation to answer Officer Beech's questions and could not be compelled to answer. Plaintiff's argument is based on inapposite case authorities distinguishing voluntary encounters from *Terry* stops and arrests. *See*, *e.g.*, *Oliver*, 209 F.3d at 1186-87. There is no evidence that Plaintiff was accused of criminal conduct or otherwise subject to "interrogation," that is, questioning likely to illicit an incriminating response. *See Pallotino v. City of Rio Rancho*, 31 F.3d 1023, 1026. Therefore, Plaintiff has not shown that a Fifth Amendment right to remain silent was triggered. *See id*. Further, it is undisputed in this case that there was a lawful order – the Order Appointing Special Guardian – requiring Plaintiff to disclose the whereabouts of Ms. Lance, and as found above, Plaintiff impeded Officer Beech's efforts to carry out his duties by her conduct.

arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Cortez*, 478 F.3d 1at 1120 (citation and footnote omitted). If Officer Beech had "arguable probable cause" to arrest Plaintiff, then he is entitled to qualified immunity. *Id.* at 1121.

Officer Beech reasonably, if mistakenly, believed that there was an APS "pickup order" for Ms. Lance, and he reasonably believed that Plaintiff knew where Ms. Lance was located. Officer Beech was entitled to rely on the information provided by a superior officer regarding the existence of the order. He was also entitled to question Plaintiff and to demand to know the whereabouts of Ms. Lance. Based on Plaintiff's evasive answers and conduct, Officer Beech could reasonably have believed that Plaintiff was obstructing or impeding the performance of his lawful duties. Therefore, Officer Beech had arguable probable cause to arrest Plaintiff for violating §540.

For these reasons, based on the undisputed facts shown by the record, the Court finds that Officer Beech is entitled to qualified immunity from Plaintiff's § 1983 claim of wrongful arrest.

**D.      Excessive Force**

The Fourth Amendment and its standard of objective reasonableness also govern Plaintiff's claim that Officer Beech used excessive force in effectuating her arrest. *See Cortez*, 478 F.3d at 1125; *see also Graham v. Connor*, 490 U.S. 386, 395 (1989). "Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (internal citations and quotations omitted); *see Cortez*, 478 F.3d at 1125. The Supreme Court further explained in *Graham*:

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . . With respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional.

*Graham*, 490 U.S. at 396-97 (internal citations and quotations omitted); *see also Cortez*, 478 F.3d at 1125. The court of appeals held in *Cortez* that claims of unlawful arrest and excessive force must be analyzed separately. To prevail on an excessive force claim, a plaintiff must prove "that the officers used greater force than would have been reasonably necessary to effect a lawful arrest," regardless whether the arrest was in fact lawful. *Cortez*, 478 F.3d at 1127.

Taking Plaintiff's evidence as true, Plaintiff was forcibly handcuffed by pulling her arms behind her back and "twisting or wringing" them to place her in handcuffs. It is undisputed that Plaintiff actively resisted Officer Beech's efforts and a scuffle ensued, during which she was forced to the ground and physically restrained. Although Plaintiff's offense was a misdemeanor, her active resistance and effort to flee warranted a degree of force necessary to restrain her and take her into custody. The Court has no trouble in finding that the degree of force allegedly used by Officer Beech was reasonably necessary to control Plaintiff and handcuff her. To the extent Plaintiff claims in her pleading that she was injured by unduly tight handcuffing, Plaintiff has presented no evidence of actual injury from the handcuffs that could be considered more than a *de minimis* injury; and thus

15

this aspect of her claim is insufficient as a matter of law under *Cortez*. *See Cortez*, 478 F.3d at 1129 (finding regarding a claim of tight handcuffing that there was "too little evidence of actual injury" to support an excessive force claim). To the extent Plaintiff relies on evidence of abrasions and sores on her forearm and thumb following her arrest to establish an actual injury sufficient to support an excessive force claim, the Court finds, as stated above, that the force used by Officer Beech was objectively reasonable under the circumstances shown by the record, even when viewed in the light most favorable to Plaintiff.

In any event, because Officer Beech has asserted the defense of qualified immunity, Plaintiff "is required to show that the force used was impermissible (a constitutional violation) and that objectively reasonable officers could not have thought the force constitutionally permissible (violates clearly established law)." *Cortez*, 478 F.3d at 1128. The second step of the requisite inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. Plaintiff presents no case authority, nor any argument based on the facts and evidence of record, to demonstrate that Officer Beech could not have reasonably believed his use of force was warranted by the circumstances. Plaintiff does not dispute that she was actively resisting efforts to handcuff her and reasonably appeared to Officer Beech to be attempting to flee into her house. Therefore, the Court finds that Plaintiff has failed to show Officer Beech used a clearly unreasonable degree of force to effectuate her arrest.

For these reasons, based on the undisputed facts shown by the record, the Court finds that Officer Beech is entitled to qualified immunity from Plaintiff's § 1983 claim of excessive force.

**E.     Municipal Liability**

To impose § 1983 liability on the City, Plaintiff must show that Officer Beech committed a constitutional violation and that a municipal policy or custom was "the moving force" behind the

constitutional violation. *Monell v. Department of Social Services*, 436 U.S. 658, 695 (1978); *Polk County v. Dodson*, 454 U.S. 312, 326 (1981). Because the Court has found no constitutional violation, Plaintiff's claim against the City necessarily fails. In addition, the only basis asserted in Plaintiff's summary judgment brief for holding the City liable under § 1983 is an alleged policy of providing an inadequate training program for its police officers.

The Supreme Court has held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989). Plaintiff argues that this standard is met in this case with regard to Officer Beech's alleged use of excessive force. To prevail under this theory, Plaintiff must prove:

> (1) [Officer Beech] exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situations with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact, and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Carr v. Castle*, 337 F.3d 1221, 1228 (10th Cir. 2003); *see also Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1318 (10th Cir. 1998). Plaintiff points to no facts or record evidence that would establish the City's liability under this theory. Plaintiff has pointed to no deficiency in the CLEET training program used by the City regarding officers' use of force and no causal link between any inadequacy and Officer Beech's use of force against Plaintiff. In short, Plaintiff has failed to demonstrate any factual basis to impose liability on the City for any use of excessive force by Officer Beech.

For these reasons, the Court finds that the City is entitled to summary judgment on Plaintiff's § 1983 claim against it.

## F.     State Law Claims

### 1.     Officer Beech

Officer Beech contends that Plaintiff's common law claims of false arrest or imprisonment and assault and battery are time barred under Okla. Stat. tit. 12, § 95(4), which requires such claims to be brought within one year after the cause of action accrues.  Plaintiff's only response to this contention is to argue that the limitations issue is governed by *Brown v. Creek County ex rel. Creek County Bd. of County Comm'rs*, 164 P.3d 1073 (Okla. 2007), and thus her action was filed within the applicable limitations period.   In *Brown*, the Oklahoma Supreme Court held that the Governmental Tort Claims Act's or "GTCA's statute-of-limitations provisions, as distinguished from those contained in the generic section on civil procedure" of Okla. Stat. tit. 12, § 95, controlled a prisoner's GTCA suit against a county arising from his detention in the county jail.  *Brown*, 164 P.3d at 1076.

However, Plaintiff's common law tort claims against Officer Beech are not governed by the GTCA.  To the contrary, a GTCA claim must be brought against a political subdivision rather than an individual employee.  The liability of a political subdivision under the GTCA is "exclusive and in place of all other liability of the . . . employee at common law or otherwise."  *See* Okla. Stat. tit. 51, § 153(B); *see Pellegrino v. State ex rel. Cameron University*, 63 P.3d 535, 540 (Okla. 2003). "An employee of a political subdivision is relieved from private liability for tortious conduct committed within the scope of employment."  *Tuffy's, Inc. v. City of Oklahoma City*, 212 P.3d 1158, 1163 (Okla. 2009); *see* Okla. Stat. tit. 51, § 163(C) ("In no instance shall an employee of the state or political subdivision acting within the scope of his employment be named as defendant . . . .").[13]

---

[13]   However, "[a] political subdivision is relieved from liability for tortious conduct committed by employees outside the scope of employment."  *Tuffy's, Inc*., 212 P.3d at 1163.

If Officer Beech was acting outside the scope of employment, Plaintiff may bring a tort claim against him individually, but in this situation, "the GTCA does not apply." *Speight v. Presley*, 203 P.3d 173, 176 (Okla. 2008); *see also Pellegrino*, 63 P.3d at 540 (GTCA's procedural requirements regarding claims against government entities do not apply to an action brought against an employee in his individual capacity for acts outside the scope of employment). Accordingly, any common law tort claim that Plaintiff has against Officer Beech is not governed by the GTCA's timeliness requirements but by the statute of limitations of Okla. Stat. tit. 12, § 95. Specifically, any common law tort claims for assault, battery, false arrest, or false imprisonment against Officer Beech individually are governed by the one-year statute of limitations of Section 95(4).[14] Plaintiff's assault and battery claims accrued on September 13, 2005. Her false arrest or imprisonment claim accrued when Plaintiff was released from her alleged illegal restraint, no later than September 17, 2005.[15] *See Belflower v. Blackshere*, 281 P.2d 423, 425 (Okla. 1955). Because Plaintiff instituted this action more than one year after the accrual of any tort claim against Officer Beech personally outside of the GTCA, Plaintiff's common law tort claims against Officer Beech are time barred.

Therefore, Officer Beech is entitled to summary judgment on Plaintiff's pendent tort claims against him individually.

---

[14] Section 95(4) mandates a one-year limitations period for actions "for libel, slander, assault, battery, malicious prosecution, or false imprisonment." *See* Okla. Stat. tit. 12, § 95(4). Although false arrest is not specifically listed, the one-year statute also applies to this tort. *See Belflower v. Blackshere*, 281 P.2d 423, 425 (Okla. 1955) (recognizing tort of false arrest carries a one year limitations period); *see also Alsup v. Skaggs Drug Center*, 223 P.2d 530, 533 (Okla. 1950) ("false arrest and false imprisonment as causes of action are indistinguishable"). Other judges in this judicial district have so ruled. *See Craig v. City of Hobart*, No. CIV-09-53-C, 2010 WL 680857, *2 (W.D. Okla. 2010) (dismissing false arrest, assault and battery claims filed more than one year after they accrued).

[15] Plaintiff presented herself for emergency room treatment on that date, and stated that she had been in jail for the "past three days" and "was released tonight." *See* Pl.'s Resp. Def. Beech's Mot. Summ. J., Ex. 10 [Doc. 40-11] at 12.

### 2.    The City

The City also argues that Plaintiff's common law tort claims are time barred.  Under *Brown*, however, Plaintiff's claims against the City under the GTCA did not accrue until her administrative claim was denied by the City or deemed denied under the Act.  *See Brown*, 164 P.3d at 1075.  Further, the GTCA's limitations period governs, and it requires an action to be filed within 180 days after the denial of the claim.  *See id*. at 1076; Okla. Stat. tit. 51, § 157(B).  The City presents no facts or evidence to show that Plaintiff's tort claims are time barred under the GTCA.

The City instead contends that Plaintiff cannot prevail on any claim under the GTCA because the City can only be held liable for "torts of its employees acting within the scope of their employment" and it has no liability "for any act or omission of any employee acting outside the scope of his employment.  *See* Okla. Stat. tit. 51, § 153(A).  As defined by the GTCA, "scope of employment" means the "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority . . . ."  *Id* § 152(12).  Accordingly, the Oklahoma Supreme Court has held:  "When a tort cause of action sued upon requires proof of an element that necessarily excludes good faith conduct on the part of employees, there can be no liability against a political subdivision in a suit based on the GTCA."  *Tuffy's, Inc. v. City of Oklahoma City*  212 P.3d 1158, 1164-65 (Okla. 2009).

Upon consideration of the issue of the City's potential liability to Plaintiff under the GTCA, the Court finds that the tort claims asserted in this action do not require proof of an element that necessarily excludes good faith conduct, and thus, the Court cannot say as a matter of law that the City cannot be liable to Plaintiff on her tort claims.  The Oklahoma Court of Civil Appeals has held that "the tort of false arrest does not require proof of malice or ill will, [and] the issue of whether or not the [officers] were acting in good faith is irrelevant.  The plaintiffs must only prove that the

[officers] had no probable cause to make a warrantless misdemeanor arrest." *See Overall v. State ex rel. Dep't of Public Safety*, 910 P.2d 1087, 1093 (Okla. Civ. App. 1995); *see also DeCorte v. Robinson*, 969 P.2d 358, 362 (Okla. 1998) (upholding a jury's finding that police officer was acting in good faith in making false arrest). Further, under a recent decision of the Oklahoma Supreme Court, which has not yet been released for publication but which provides persuasive authority as to how the court will rule, the standard of tort liability for a police officer's use of force is described as follows:

> A police officer's duty is very specific: it is to use only such force in making an arrest as a reasonably prudent police officer would use in light of the objective circumstances confronting the officer at the time of the arrest. In applying this standard, an officer's subjective mistake of fact or law is irrelevant, including whether he (she) is acting in good faith or bad. The question is whether the objective facts support the degree of force employed.

*Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dep't*, No. 105552, 2010 WL 450900, *7 (Okla. Feb. 9, 2010) (footnotes omitted).[16] Accordingly, state law tort claims based on Officer Beech's alleged false arrest and use of excessive force against Plaintiff may be proved without regard to whether Officer Beech was acting in good faith. Stated another way, a finding of tort liability on Plaintiff's claims and a finding that Officer Beech was acting within the scope of his employment for purposes of GTCA are both possible, notwithstanding Plaintiff's allegation in her pleading that Officer Beech acted intentionally and maliciously. Therefore, the Court finds that the

---

[16] In an omitted footnote, the Oklahoma Supreme Court described the standard of care adopted in its decision to be similar, but not identical, to the standard employed by federal courts for § 1983 civil rights claims of excessive force. *Id*. at *7 n.47. Thus, in this case, the Court's finding that Officer Beech's use of force was objectively reasonable under Fourth Amendment standards is not dispositive of Plaintiff's state law claim. Further, because the City does not seek summary judgment on the merits of Plaintiff's state law claims, the Court does not reach this issue.

City has failed to show it is entitled to a judgment as a matter of law on Plaintiff's state law tort claims.

In its Motion, the City makes an alternative request that, if the Court finds the state law tort claims cannot be summarily decided, the Court should decline to exercise supplemental jurisdiction over these claims and dismiss them without prejudice to refiling. In her response, Plaintiff fails to respond to this request, and therefore, the Court in the exercise of discretion under LCvR7.1(g), deems the issue confessed. Further, because all federal claims have been resolved, the Court finds that it may properly decline to exercise supplemental federal jurisdiction over Plaintiff's remaining state law claims against the City pursuant to 28 U.S.C. § 1367(c)(3). *See Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998). ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). However, because this case was not originally filed in federal court but was removed from state court, a proper disposition of Plaintiff's remaining state law claims may include a remand to state court rather than a dismissal. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) ("[A] district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate."). Under the circumstances of this case, where discovery has been completed and the case is substantially ready for trial, the Court finds that an order of remand, rather than dismissal, "best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Id*.

Therefore, Plaintiff's common law tort claims of false arrest, assault and battery against the City will be remanded to the state court from which they were removed, which is the District Court of Oklahoma County, Oklahoma.

**Conclusion**

For the reasons stated above, the Court finds that Defendants are entitled to summary judgment on all claims asserted by Plaintiff under 42 U.S.C. § 1983 and that Officer Beech is entitled to summary judgment on the asserted state common law tort claims. The Court also finds, however, that the City has not shown it is entitled to summary judgment on Plaintiff's claims governed by the Governmental Tort Claims Act, and that Plaintiff's remaining state law tort claims against the City should be remanded to state court.

IT IS THEREFORE ORDERED that Defendant John Beech's Motion for Summary Judgment [Doc. No. 34] is GRANTED and Defendant City of Del City's Motion for Summary Judgment [Doc. No. 35] is GRANTED in part and DENIED in part. Defendants are entitled to summary judgment on all claims asserted under 42 U.S.C. § 1983. Defendant John Beech is entitled to summary judgment on Plaintiff's state common law tort claims. Plaintiff's state law tort claims against Defendant City of Del City remain for trial.

IT IS FURTHER ORDERED that Plaintiff's action against the City of Del City for assault and battery and false arrest based on the acts of Officer Beech, which action is governed by Oklahoma's Governmental Tort Claims Act, is hereby remanded to the District Court of Oklahoma County, Oklahoma, where it originated as Case No. CJ-2007-2062.

IT IS SO ORDERED this 29th day of March, 2010.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE